**ZUMPANO PATRICIOS & HELSTEN, LLC**
Bradley R. Helsten, Esq.
Utah Bar No. 5878
2061 E. Murray Holladay Rd.
Salt Lake City, Utah 84117
Telephone: (801) 478-5899
Facsimile: (801) 401-7228

**ZUMPANO PATRICIOS & POPOK, PLLC**
Michael S. Popok, Esq.
Mitchell G. Mandell, Esq.
417 Fifth Avenue, Suite 826
New York, NY 10016
Telephone: (212) 381-9999
Facsimile: (212) 320-0332
*Admitted Pro Hac Vice*

**GERAGOS & GERAGOS, PC**
Mark Geragos, Esq.
Ben Meiselas, Esq.
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
*Pro Hac Vice Applications in Process*

**GRAYLAW GROUP, INC.**
Michael E. Adler, Esq.
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834

**DHILLON LAW GROUP INC.**
Harmeet K. Dhillon, Esq.
Nitoj P. Singh, Esq.
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| PANDA GROUP, PC d/b/a PANDA ACCOUNTING, on behalf of a class of similarly situated businesses and individuals,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, BANK OF AMERICA N.A., CHASE BANK USA, N.A., MOUNTAIN AMERICA FEDERAL CREDIT UNION d/b/a MOUNTAIN AMERICA CREDIT UNION, AND UNIVERSITY FIRST FEDERAL CREDIT UNION d/b/a UNIVERSITY FEDERAL CREDIT UNION,<br><br>Defendants. | **Civ. No. 4:20-cv-00045-DN-PK**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable David Nuffer |

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff Panda Group, PC d/b/a Panda Accounting brings its First Amended Class Action Complaint ("FAC") on behalf of itself and a proposed class of similarly-situated agents (the "Class") against Defendants Bank of America, N.A., JPMorgan Chase Bank, N.A., and University First Federal Credit Union d/b/a University Federal Credit Union (collectively, "Defendants" or "Lenders", as defined below)[1], to obtain fees owed to Plaintiff and the Class as a result of their work as agents ("Agents," "PPP Agents" or "Borrower Agents") who assisted small- and medium-sized business borrowers ("Borrowers") in obtaining federally-guaranteed loans through the Paycheck Protection Program ("PPP"), a federal bail-out program implemented to provide

[1] Defendant Mountain America Federal Credit Union d/b/a Mountain America Credit Union has been dismissed without prejudice from this action. *See* Docket No. 52.

businesses with loans to combat the economic impact of COVID-19. The Agent was retained not by Defendants, but directly by the Borrowers to serve as their independent representatives in the process and help them obtain PPP loans. Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as the Borrowers' Agents under the PPP in the form of agent fees (the "Agent Fees"), and provides no right of the Lenders to reject the involvement or role of the Agents in the PPP process. Despite precise regulatory requirements providing that the Agent Fees are owed to Plaintiff, Defendants have failed to pay Plaintiff and the members of the Class ("Class Members"). Instead, Defendants have kept the entirety of the PPP Agent Fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

**PARTIES**

1. Plaintiff Panda Group, PC d/b/a Panda Accounting ("Panda Group") is a Utah professional corporation with a principal place of business in Washington, Utah. Panda Group specializes in providing accounting and related consulting services to small- and medium-sized businesses.

**DEFENDANTS, THE SERIES OF PPP TRANSACTIONS AND/OR OCCURENCES, AND THE COMMON QUESTIONS OF LAW**

2. As recently observed by the United States Judicial Panel on Multidistrict Litigation ("JPML") concerning this case and similar ones around the country, the case against the Defendants " . . . allege[s] similar policies and practices by the defendant banks – specifically, that defendants failed to pay fees to agents who assisted small businesses in applying for and obtaining PPP loans, contrary to the provisions of the CARES Act and federal regulations." (*See* Order Denying Transfer at 1, IN RE: Paycheck Protection Program (PPP) Agent Fees Litigation, MDL 2950, ECF No. 365).

3. Each claim against each Defendant lender involves a single loan product (a PPP loan), that was created under a single Congressional act (the Coronavirus Aid, Relief, and Economic Security Act (P.L. 116-136) ("CARES Act" or the "Act")), administered by a single government agency (the Small Business Administration ("SBA")) and governed by a single set of regulations (the "SBA Regulations," as defined below).

4. Plaintiff is an Agent for PPP Borrowers who alleges entitlement to mandated Agent Fees for assisting Borrowers in preparing PPP loan applications ("Applications") that were submitted to Defendants—and ultimately funded by Defendants—pursuant to the same Act and SBA Regulations.

5. In addition, almost all the facts at issue here are common to Defendants. That is because there is a single loan product at issue here—the federal government's PPP loan product—not multiple proprietary loan products created by different defendants. To participate as PPP Lenders, "Lenders *must* comply with the applicable lender obligations set forth in [the SBA Regulations]."

6. As alleged, all Defendants treated the program the same way: they were paid billions of dollars (or in the case of JPMorgan Chase Bank, N.A. and Bank of America, N.A., over $1.5 billion) in PPP lender fees ("Lender Fees," as defined below) by the federal government, but then refused to recognize the statutory role and participation of the Borrower Agents in the PPP, and refused to pay them the required Agent Fees out of the bank's share of the PPP Lender Fees received.

7. The common practice addressed here is Defendants' willing participation in the PPP and receipt of federal funds in the form of the Lender Fees, but subsequent failure to remit to the Class the Agent Fees as required by the SBA Regulations.

8. Fundamentally, there is a common core legal issue present against all Defendants: whether Agents who assisted Borrowers in applying for PPP loans are entitled to the statutory Agent Fees.

**INDIVIDUAL DEFENDANTS' ALLEGATIONS**

9. Upon information and belief, Defendant Bank of America, N.A. ("BofA") is a federally chartered bank with its headquarters located in Charlotte, North Carolina and is authorized to conduct business under the laws of the State. Upon information and belief, BofA conducts substantial business within this District. Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of BofA in the approximate total amount of $400,000. This Borrower's PPP loan was funded, and BofA has been paid its Lender Fee by the federal government under the same PPP, which by definition includes Plaintiff's Agent Fee. Prior to the filing of this suit, BofA took the public position that it is not paying Agent Fees on its website, where it stated that "[i]n the absence of a pre-loan approval written agreement between the agent and Bank of America, Bank of America does not pay fees or other compensation to agents who represent or assist borrowers in applying for loans through the [PPP]." BofA's online application system did not allow the Borrower or Agent to submit any information identifying the Agent. BofA has failed to comply with the SBA Regulations and submit SBA Form 159, "Fee Disclosure Form and Compensation Agreement" ("Form 159"), to the SBA, thereby allowing Defendant to pay Plaintiff the statutorily-required fee that Plaintiff is owed. Having taken custody of the Agent Fee owed to Plaintiff paid to it by the federal government, BofA has failed to pay Plaintiff the statutorily-required fee that it is owed. According to data made public by the SBA

and S&P Global Market Intelligence,[2] Defendant BofA made the second most PPP loans of any bank in the United States and has earned an estimated $755 million in Lender Fees.

10. Upon information and belief, Defendant JPMorgan Chase Bank, N.A. ("Chase") is a federally chartered bank with its headquarters located in New York, New York and is authorized to conduct business under the laws of the State. Upon information and belief, Chase conducts substantial business within this District. Plaintiff acted in the statutorily-defined role of an Agent in securing PPP loans for six (6) Borrowers of Chase in the approximate total amount of $290,000. These Borrowers' PPP loans were funded, and Chase has been paid its Lender Fees by the federal government under the same PPP, which by definition includes Plaintiff's Agent Fees. Chase took the public position that it is not paying Agent Fees, and its online application system did not allow the Borrower or Agent to submit any information identifying the Agent. Having taken custody from the SBA of the Agent Fees owed to Plaintiff, Chase has failed to comply with the SBA Regulations and submit Form 159 to the SBA, thereby allowing Defendant to pay Plaintiff the statutorily-required fees that Plaintiff is owed. Having taken custody of the Agent Fees owed to Plaintiff and paid to it by the federal government, Chase has failed to pay Plaintiff the statutorily-required fees that it is owed. According to data made public by the SBA and S&P Global Market Intelligence,[3] Defendant Chase made the most PPP loans of any bank in the United States and has earned an estimated $864 million in Lender Fees.

---

2 *See* Z. Fox & Z. Tariq, *US Banks Stack Millions in PPP Loan Fees, But Risks Abound*, S&P Global Market Intelligence, https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/us-banks-stack-millions-in-ppp-loan-fees-but-risks-abound-59282449 (last visited October 23, 2020).

3 *Id.*

11.     Upon information and belief, Defendant University First Federal Credit Union d/b/a University Federal Credit Union ("UFCU") is a federal credit union with its headquarters located in Salt Lake City, Utah and is authorized to conduct business under the laws of the State. Upon information and belief, UFCU conducts substantial business in this District.  Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of UFCU in the approximate total amount of $100,000.  This loan was funded, and UFCU has been paid its Lender Fee by the federal government under the same PPP, which by definition includes Plaintiff's Agent Fee.  Prior to the filing of this suit, Plaintiff also requested its Agent Fee from UFCU, which UFCU declined to pay by email.  UFCU has failed to comply with the SBA Regulations and submit Form 159 to the SBA, thereby allowing Defendant to pay Plaintiff the statutorily-required fee that Plaintiff is owed. Having taken custody of the Agent Fee owed to Plaintiff paid to it by the federal government, UFCU has failed to pay Plaintiff the statutorily-required fee that it is owed.

12.     In the FAC, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the named Defendant  (1) committed or authorized such acts or (2) failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.  When reference is made to Defendants, that reference shall be equivalent to individually naming each of the named Defendants, and allegations toward Defendants are explicitly and individually targeted to each of the Defendants named in this lawsuit.

## JURISDICTION AND VENUE

13. The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this lawsuit is a proposed nationwide class action in which: (1) at least some members of the Class have different citizenship from Defendants; (2) the Class consists of more than 100 persons or entities; and (3) the claims of the Class exceed $5,000,000 in the aggregate.

14. This Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Act and the SBA Regulations.

15. This Court has personal jurisdiction over Defendants because Defendants are residents of this District and/or Defendants do business in this District and/or a substantial number of the events giving rise to the claims alleged herein took place in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because (1) Plaintiff's principal place is located in this District and (2) a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied on behalf of its clients and/or employers for PPP loans while in this District and Defendants marketed, promoted, took applications for, and/or funded PPP loans in this District..

## FACTUAL ALLEGATIONS

### Background

17. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

18. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

19. On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

20. On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States that declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

21. On March 25, 2020[4], in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Act. The Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020.

22. The Act, the largest economic stimulus and rescue package in United States history, included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the SBA, a United States government agency that provides support to entrepreneurs and small businesses nationwide.

**The PPP: Program Description**

23. As part of the Act, the federal Government created the $349 billion PPP to provide loans to small- and medium-sized businesses with fewer than 500 employees.

24. The PPP was created to provide businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls.

---

4 Two days later, on March 27, 2020, Utah Governor Gary R. Herbert issued an executive "Stay Safe, Stay Home" Directive (the "Directive") for the State to prevent the spread of COVID-19. The Directive was extended until May 1, 2020. By mid-October 2020, Governor Herbert warned that Utah was having "one of the worst outbreaks in the country.". *See Utah officials announce new pandemic strategy, mask mandates*, Associated Press, Oct. 13, 2020, https://apnews.com/article/virus-outbreak-pandemics-utah-salt-lake-city-gary-herbert-cb2f9b2b400dd94c8731261a5e31e475 (last visited Oct. 23, 2020).

The loans are backed by the SBA, administered by Treasury, and funded through private lenders ("Lenders"), including banks and financial services firms such as Defendants, that review and approve Applications.

25. Pursuant to the SBA interim final rule to be codified at 13 C.F.R. Part 120 (the "SBA PPP Interim Final Rule"), the PPP is a limited funding program, as funds are provided on a "first come, first served basis." *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20813 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

26. The PPP temporarily adds a new product to the SBA 7(a) Loan Program ("SBA 7(a) Program"). Congress elected to use the SBA to distribute the PPP funds rather than create a new federal agency with new attendant federal bureaucracy in order to best ensure that borrowers in need of the bail-out monies would be rapidly connected to the federal funds. The velocity by which the PPP money would find its way into the hands of the borrowers, to which the Agents substantially contributed, was considered to be of paramount importance to save Main Street America.

27. Treasury announced on April 3, 2020 that small- and medium-sized businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[5]

---

5 *See Paycheck Protection Program (PPP) Information Sheet: Borrowers,* Dep't of Treasury (last visited October 23, 2020), *https*://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf.

28. In its April 15, 2020 PPP Interim Final Rule, the SBA expressly recognized that, "with the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus."[6]

29. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

30. On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 (the "Flexibility Act") (Pub. L. 116-142) which changes key provisions of the PPP, including provisions related to its loans, the deferral of PPP loan payments, and forgiveness under the program. The Flexibility Act did not, however, change Defendants' statutory duty to pay Plaintiff the Agent Fees owed.

**The SBA Regulations Supersede the SBA 7(a) Regulations as to Agents and Fee-Entitlement**

31. Treasury's PPP Information Sheet (Lenders) (the "PPP ISL")[7], consistent with the SBA PPP Interim Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on banks and other approved SBA lenders, as well as the addition of independent Borrower's Agents who provide small- and medium-sized businesses with the necessary assistance to enable them to apply for a PPP loan. In the end, the SBA Regulations promote a rapid-lending system with three (3) participants:

---

6 *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

7 *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited October 23, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

a.   a Lender who funds the PPP loans backed by the federal government;

b.   a small- or medium-sized "Main Street" Borrower who obtains the PPP loan for the specified purpose; and

c.   an independent Agent of the Borrower, often a small- or medium-sized business itself, that is a local financial advisory firm, accountant, business consultant, payroll service, bookkeeper, attorney, or employee of the applicant ("Applicant"), who is often closest to the small- and medium-sized local businesses – many of whom do not have their own banking relationships – who brings the Borrower to the Lenders, and helps shepherd the Borrower through the PPP loan process.

32.   It is through the Agent as the Borrower's representative that the PPP ensures the rapid and efficient allocation of a limited pool of dollars under its "first-come, first-served" approach.  Without the valuable assistance of their Agents, the Borrowers, many of whom are unsophisticated in the banking and lending arena, would be shut out of obtaining PPP funds, undermining the essence of the PPP as designed by Congress.  In fact, the original tranche of PPP funding was exhausted two (2) weeks after the program opened.

33.   Under the same SBA Regulations, both the Lenders and Agents are paid mandatory fees under the PPP for their respective work to incentivize both to participate in the PPP and rapidly connect Borrowers to their cash infusions.

34.   Notably, before the passage of the Act, Lenders and Agents were not compensated by the SBA for originating traditional SBA 7(a) loans.  That is why the Act authorized the Treasury to establish Agent Fees.  The Treasury, "in consultation with the Secretary, determined that the

agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[8]

35. In other words, when implementing the Act, the Treasury determined that the best and quickest way to get PPP loans to the small business Borrowers was to supersede many of the existing 7(a) loan requirements and establish new regulations where Lenders and Agents work together to quickly and efficiently process Applications and Borrowers would be connected to Lenders to obtain the loans. To incentivize this relationship, the Lender and Agent are to split the federal government fees with approximately 80% to be retained by the Lender, and 20% to be forwarded to the Agent by the Lender from its Lender Fees received.

36. Before the passage of the Act, lenders were not compensated at all by the SBA for originating SBA 7(a) Loans. However, under the SBA Regulations, Lenders such as the Defendants are generously compensated for processing PPP Loans through Lender Fees.

37. The SBA Regulations define Agent[9] under the PPP broadly to include:

a. "An attorney;

b. An accountant;

c. A consultant;

[8] SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20816.

[9] Separately, the SBA for other purposes similarly defines an "agent" in 13 CFR Section 103.1(a) to also include "an authorized representative, including attorney, accountant, consultant, packager, . . . or any other individual or entity representing an [a]pplicant . . . For purposes of SBA's business loan programs, the term Agent includes but is not limited to: . . . (2) Packager: An Agent who prepares the Applicant's application for financial assistance and is employed and compensated by the Applicant . . . (3) Loan Broker: . . . an Agent who . . . assists the Applicant in finding an SBA Lender that will be willing to make a loan . . . ."

    d. Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

e. Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

f. A loan broker; or

g. Any other individual or entity representing an applicant by conducting business with the SBA."[10]

38. The Agent, as defined by the SBA, is not the Lender's agent, it is the Borrower's independent agent. Nowhere in the Act or the SBA Regulations does the federal government require, mandate, or even suggest that a Borrower Agent be "approved" by a Lender in writing[11]

---

[10] *See Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited October 23, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[11] Since the initial filing of this suit, the Lenders have been working to lobby the Treasury and pressure certain members of Congress to obtain a PPP "bailout" of their own and have the rules of the road related to Agent Fees changed after the fact. Unhappy about having to share any of their Lender Fees with the Agents after those Agents assisted their Borrowers in the PPP process, reducing the Lenders' workload in the process, the Big Banks recently had a member of Congress at a hearing "lobby" the Treasury Secretary and ask a question specifically about these lawsuits. Specifically, the Congressman asked if Agents were entitled to fees at all under the PPP and requested a new rule change in an effort to try to insulate the Lenders from these class action suits. But the Lenders' transparent lobbying efforts do not change the simple fact that the Agents such as Plaintiff reasonably relied on the SBA Regulations as it existed to work overtime to assist Borrowers to obtain the scarce bailout PPP funds in record time, thus contributing mightily to saving Main Street. Having done so, it should be paid for its work at the statutory rate from the Lender Fees regardless of any lobbying efforts or a subsequent *ex post facto* rule change. In any event, this Agent worked, not for the Lenders, but for the Borrowers. While it may make some sense that a Lender's relationship with one of its own agents would require lender approval, it makes absolutely no sense that a Borrower would need to obtain approval from a Lender to obtain PPP assistance from its own employee, CPA, accountant, lawyer, or payroll service.

or otherwise before the Agent assists the Borrower, or that the Agent even be approved by the SBA at all, to entitle the Agent to its Fee for the work performed under the PPP.

39.    All that is required is that the PPP Agent fit into one of the broad categories outlined above and do the work in connecting the Borrower to the PPP funds.  Which makes perfect sense, since why would the SBA Regulations require that a Borrower's own Agent, who is likely one of its employees, or its CPA, accountant, bookkeeper or payroll service, be approved by the Lender? The answer is that it does not.

40.    There is a fundamental reason why the PPP is not a traditional SBA 7(a) program, nor do many of the 7(a) regulations and requirements apply to the streamlined, high-octane PPP, despite the Lender's self-serving urging that each and every 7(a) regulation must be grafted on to the PPP.  It is because the SBA has expressly superseded the 7(a) program requirements with the new PPP requirements and where they conflict, the SBA Regulations control.  *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816 (April 15, 2020) (codified at 13 C.F.R. pt. 120) ("The program requirements of the PPP . . . temporarily supersede any conflicting" requirements of the traditional 7(a) loan program).

41.    Because the PPP created a completely new loan product with streamlined and different procedures and application requirements for the primary participants (Borrower, Agent and Lender), there are many fundamental differences between the traditional 7(a) SBA loans and PPP loans.

42.    For example: (1) 7(a) does not allow the SBA to compensate Lenders (or Agents) for originating SBA loans, while the PPP mandates a Lender Fee; (2) 7(a) requires the Lender to pay the SBA a guarantee fee, while the PPP does not; (3) 7(a) does not allow Agents to receive a contingent fee, while the PPP does; (4) 7(a) does not require that Lenders pay Agents out of the

Lender Fees (because there are none), while the PPP mandates just that; and (5) Agents and Lenders are narrowly defined under 7(a), while the PPP expands the definitions of both. *See* Comparison Between Traditional 7(a) and PPP Loans attached hereto as Exhibit "A".

43. Additionally, under the PPP, there is no collateral required for loans which are forgivable and 100% guaranteed by the SBA. Even the information that Borrowers need to provide is streamlined under the PPP[12] versus the 7(a) loan program.[13]

44. Further, the form required by the PPP to be completed by the Borrower – the "Paycheck Protection Program Borrower Application Form" – tellingly omits the question included in the traditional SBA 7(a) loan program application (Question 10) that requires disclosure of an agent by the borrower. This has not stopped some of the Lender Defendants from improperly grafting a disclosure requirement, or worse, a prohibition against a PPP Borrower using its own Agent as a condition of obtaining the PPP loan at all.

**There are Lender Agents, and There are Borrower Agents**

45. By assisting businesses in preparing their Applications, PPP Agents played a critical role in fulfilling the goals of the CARES Act and ensuring adherence to Congress's legislative intent. Indeed, the Senate directed the Treasury to "issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[14]

---

[12] *See* Paycheck Protection Program, Borrower Application Form, https://www.sba.gov/sites/default/files/2020-04/PPP%20Borrower%20Application%20Form.pdf (last visited October 23, 2020).

[13] *See* SBA 7(a) Borrower Information Form, *https*://www.sba.gov/sites/default/files/2018-03/SBA-1919.pdf (last visited October 23, 2020).

[14] CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281 (emphasis added).

46. On or about August 27, 2020, the SBA reaffirmed its earlier stance on regulations governing the PPP as compared to the traditional SBA 7(a) Program by publishing the new SBA's Standard Operating Procedure 50 10 6, Part 2, Section B, page 224 (effective Oct. 1, 2020) ( "SBA SOP 2020"), which clarifies that, "Because [PPP] loans authorized under § 7(a)(b) of the Small Business Act are 7(a) loans, this SOP applies to the making of PPP loans, to the extent that the SOP is not superseded by or in conflict with PPP-specific requirements."

47. Under the PPP, as well as the traditional SBA 7(a) Program, there are Lender Agents and Borrower Agents. These are two separate, distinct categories of agents, with separate SBA governing requirements.

48. The Borrower Agent works for the Borrower. As detailed in the 2019 SBA Standard Operating Procedures ("SBA SOP"), "Employment of Agent Initiated by Applicant … When an Applicant employs an Agent: 1. The Agent may bill and be paid by the Applicant for providing packaging services as long as compensation is reasonable and customary for those services . . .[15] As for the requirement that "compensation is reasonable and customary for those services," the SBA and Secretary of the Treasury Steven Mnuchin determined that the Agent Fees "are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[16]

49. Immediately following the section in the SBA SOP titled "Employment of Agent Initiated by Applicant" is "Employment of Agent by Lender (not an LSP)." This section provides the rules that the Lender must follow when hiring its own Agent. "When a Lender has decided to approve a loan application and needs assistance with the preparation of the paperwork for the application to SBA, the loan closing, or preparation of the loan to sell it on the Secondary Market,

[15] SBA's Standard Operating Procedure 50 10 5(K), Subpart B, ch 3, IX(D).

[16] *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20811, 20816 (4)(c).

the Lender may use an Agent . . . 2. The Agent must bill and be paid by the Lender for all services and the Lender may not pass these charges through to the Applicant under any circumstances."[17]

50. The Lender has the sole right to determine whether it will retain a Lender Agent. A Borrower has no right to approve or disapprove a Lenders' Agent. Similarly, per the SBA SOP and the SBA Regulations, Borrowers are free to choose their own Agents, and a Lender has no right to approve or disapprove a Borrower Agent.

51. Nowhere in the CARES Act, the SBA SOP, the SBA SOP 2020, or the SBA Regulations does the federal government require, mandate, or even suggest that a Borrower Agent be approved by a Lender either before or after the Agent assists the Borrower to entitle the Agent to its Agent Fee for assisting an Applicant with the preparation of their Application. What they do say is that the Lender must complete, sign, and submit the necessary forms for each Borrower's Agent to receive its Agent Fee, which Defendants refuse to do.

**Defendants Were Legally Required to Complete, Sign, and Submit Form 159**

52. In the traditional SBA (7)(a) Program, the Lender pays the Lender's Agent, and the Borrower pays the Borrower's Agent, their respective Agent Fees. However, the SBA Regulations specifically overrode that possibility by stating, "Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds." Therefore, the traditional SBA SOP is in "conflict with PPP-specific requirements," *i.e.*, the SBA Regulations, meaning the SBA Regulations apply. Therefore, the Lender is legally required to pay the Borrower's Agent the Agent Fee normally paid by the Borrower.

53. In order for the Borrower to pay the Borrower's Agent under the traditional 7(a) Program, the Borrower would use Form 159, which the Borrower, The Borrower's Agent, and the Lender must sign. But because the SBA Regulations overrode who pays the Borrower's Agent, the SBA requires the Lender to use Form 159. "The Applicant or the Lender, depending on who

[17] SBA SOP, Subpart B, Ch. 3, IX(E).

paid or will pay the Agent, must use SBA Form 159 . . . to document the fees."[18] The SBA Regulations specifically put the Lender into the Borrower's shoes and require the Lender to fill out and sign the required Form 159.

54. Form 159 states: "Who must complete this form?: This form must be completed and signed by the SBA Lender and the Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application. Each Agent paid by the Applicant to assist it in connection with its application must also complete and sign the form. When an Agent is paid by the SBA Lender, the SBA Lender must complete this form and the SBA Lender and Applicant must both sign the form."[19]

55. The only time the Agent is required to sign Form 159 is if the Agent is being paid by the Applicant. Under the PPP, the Applicant is expressly disallowed to pay the Agent, shifting the responsibility to the Lender. The Agent is not required to fill out or sign Form 159.

56. Additionally, supporting it is the Lenders' legal responsibility to submit Form 159 to the SBA, the SOP requires that, "Lenders must submit SBA Form 159 to Fiscal Transfer Agent ("FTA") on loans that involve payment of fees, including, but not limited to, those covering any packaging fees charged by the Lender or where the Lender paid the Agent fee."[20]

57. Nowhere in the CARES Act, the SBA Regulations, the SOP, or Form 159 does the Lender have the power to tell the Borrower it cannot use the Agent of its own choosing or decide not to fill out, sign, and submit Form 159.

58. Instead, each of the Defendants: (1) stated it was not paying Agent Fees or failed to respond to Plaintiff's request for Agent Fees; (2) designed its Application process to avoid learning the fact or identity of any Borrower Agents, so the Lender did not have to fill out Form 159; or, (3) even after learning the identity of the Agent, Defendant refused to comply with the

[18] SBA SOP, Subpart B, ch. 3, VIII(B)(1).

[19] SBA Form 159, at p. 1.

[20] SBA SOP, Subpart B, Ch. 3, VIII(B)(6).

SBA SOP and fill out Form 159 and submit it to the SBA after the Borrower's PPP loan was funded.

59. Assuming, arguendo, that the Plaintiff or Borrower was supposed to submit Form 159 to the Lender, then, as described in detail above, even though Plaintiff was ready, willing, and able to fill out Form 159, Defendants thwarted Plaintiff's ability to submit Form 159 by not allowing Plaintiff or Borrower to do so or by stating Defendant was not paying Agent Fees, making any attempt by Plaintiff to submit Form 159 futile.

**<u>The PPP Incentivizes all 3 Participants to Rapidly Connect Funds to Borrowers and Affirms the Critical Importance of the Agent Under the PPP</u>**

60. Upon information and belief, without the assistance of the PPP Agents, tens of thousands of businesses would have been unable to apply for the PPP loans or done so within the strict time limits.

61. The SBA Regulations also expressly provide how each of the PPP participants (Borrower, Lender and Agent) will benefit from (and be compensated under) the program, to incentivize them to participate in the PPP and ensure the rapid distribution of the scarce federal funds. For example, the PPP Borrower receives 100 percent (100%) of the loan amount without any deductions for fees or costs.

62. For the Lenders, the SBA Regulations provide that they will be generously compensated based on the balance of the financing at the time of final disbursement. Specifically, the SBA will pay Lender Fees in the following amounts for processing PPP loans:

a. Five percent (5%) for loans of not more than $350,000;

b. Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

c. One percent (1%) for loans of at least $2,000,000.

63. In addition, the Lenders (but not the Agents) have the opportunity to earn interest on the PPP loans if they are not forgiven under the program.

64. For the Agents, the SBA Regulations incentivize them to bring the Borrowers and their loan packages to the Lenders, or otherwise doing the work required to connect the Borrowers to the PPP funds, by expressly providing that "Agent [F]ees will be paid out of lender fees. *The lender will pay the agent*. Agents may not collect any [F]ees from the applicant." (Emphasis added.) "The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan" is as follows:

a. One (1) percent for loans of not more than $350,000;

b. 0.50 percent for loans of more than $350,000 and less than $2 million; and

c. 0.25 percent for loans of at least $2 million."

65. The SBA Regulations also reflect that the Secretary of the Treasury "determined that the [A]gent [F]ee limits . . . are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[21]

66. By its terms, the PPP does not allow the Lender to negotiate or "pre-approve" the amount of fees the Agent will receive under the PPP. That is addressed in the SBA Regulations, including the portion of the Lender Fee the Agent is entitled to for bringing the Borrower and its completed application to the Lender or otherwise doing the work required to connect the Borrower to the PPP funds.

[21] *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20816 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

67. Upon information and belief, Defendants funded PPP loans for Borrowers represented by Plaintiff and the Class, received their Lender Fees from the federal government and failed to pay the Agent Fees earned by the Plaintiff and Class out of the Lender Fees received.

68. Despite Plaintiff's important (and successful) work in assisting its client Borrowers with their Applications and persistent requests for Agent Fees, Defendants have failed and refused to pay the required Agent Fees to Plaintiff and the Class, and have instead retained the Agent Fee portion of the Lender Fees received from the federal government for themselves.

69. Plaintiff has no other means to obtain payment for the PPP Agent services it provided to the Borrower clients in securing their PPP loans. The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the Applicants (i.e., Plaintiff's clients). The SBA Regulations require Plaintiff to be paid only by Lenders (such as Defendants), through the payment of the portion of the Lender Fees each Lender receives.

70. Defendants, as well as other Lenders in general, often cite to their own internal policies, or lack of non-required procedures (i.e., no agreement between Defendants and Plaintiff as to Agent Fees or no Agent "disclosure"), for refusing to pay the Agent Fees, or attempting to reduce the statutorily-mandated fee owed to the Agents under the PPP and consistent with Congressional intent.

71. As a result, Plaintiff and the Class Members are not being compensated for their work, and for their valuable and necessary contribution to the PPP as intended by Congress.

**Plaintiff and the Class, in Their Role as the Borrowers' Agents, Assist Their Clients and/or Employers With Applying for PPP Loans**

72. On or about March 27, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would seriously impact its clients' businesses, assisted its clients with obtaining PPP loans through Defendants.

73.     Plaintiff spent considerable time becoming familiar with the Act, the SBA Regulations, and other relevant regulations, in particular, (a) Section 1102 of the Act, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and (b) Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

74.     In or about April 2020, Plaintiff, in its role as Agent, assisted its clients as Borrowers under the PPP in the gathering and analysis of their documents, as well as the calculation and preparation of the Applications, and in identifying Lenders who were processing PPP loans in the "race to the bank" environment created by the first-come, first-served nature of the PPP.

75.     Based on the SBA Regulations, Plaintiff understood that the only compensation it would receive was from the mandated Agent Fees that were advanced to the Lenders by the federal government for the Plaintiff's and Class Members' benefit as part of the statutory Lender Fees.

76.     In addition, Plaintiff worked to identify Lenders, such as Defendants, who were taking Applications and funding PPP loans in order to connect its Borrowers to the limited federal funds available under the PPP.

77.     To participate in the PPP, Lenders "must comply with the applicable lender obligations set forth in this [SBA PPP Final Rule] . . ."  85 Fed. Reg. 20812.  These obligations include the provisions regarding the Agent Fees.

78.     Plaintiff and the Class Members reasonably relied in good faith on the existing SBA Regulations to expect their earned Agent Fees from the Lenders after the funding of their clients' or employers' PPP loans.

79.     But Defendants did not comply with the SBA Regulations in distributing the Agent Fees from the Lender Fees paid to them by the federal government under the PPP, thus illegally retaining the Agent Fee portion of the Lender Fees.

80.     Plaintiff understood that it was not entitled to the Agent Fees until the Lenders received their Lender Fees. Upon information and belief, Defendants have received the Lender Fees for some of the Borrowers assisted by Plaintiff and the Class, thereby making the Agent Fees immediately due to any such Plaintiff and Class Members.

81.     In the various ways specifically alleged above, Defendants, as Lenders under the PPP and without any legal authority[22] under the SBA Regulations or otherwise, refused to pay Agents such as Plaintiff the required statutory Agent Fees from the fees it obtained from the federal government, or Defendants repudiated the Agents' role and refused to pay the required Agent Fees as a general policy.

82.     As a result of Defendants' unlawful actions, Plaintiff and the Class Members have suffered financial harm by: (a) being deprived of the statutorily-mandated compensation for the professional services that it provided in connection with assisting its clients in applying for and obtaining PPP loans and (b) being denied by Defendants just compensation for playing the vital

---

[22]     Demonstrating further the merit of Plaintiff's claims and supporting the assertion that the Lenders have no legal authority to unilaterally refuse to pay Agent Fees (and despite their current lobbying efforts), on May 27, 2020, one of the PPP Lenders received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed that Lender and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the Bank's non-payment of fees to agents of borrowers and the Bank's policies related to payment or non-payment of agent fees." *See United Community Banks, Inc., Form 8-K* (last visited October 23, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. United Community Banks, Inc. is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM. In addition, more than a few Lenders have agreed with Plaintiff's legal position here and have agreed to pay the Agent Fees from their Lender Fees. [Can we list names here?]

role of Agents in the PPP process on behalf of the intended beneficiaries of the program, the small- and medium-sized business owners.

**Class Action Allegations**

83.     Plaintiff brings this action on behalf of itself and all similarly-situated Class members pursuant to Rules 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following nationwide class ("Nationwide Class"):

> All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the Act.

84.     To the extent that the Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to Rules 23(b)(1), (b)(2), and (b)(4 of the Federal Rules of Civil Procedure and seeks certification of the following statewide class ("Statewide Class"):

> All Agents who assisted a business in Utah in preparing an Application for a PPP loan pursuant to the Act.

85.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations and as follows:

> All Agents (as that term is defined by the SBA Regulations) that facilitated businesses in receiving a loan under the PPP, *i.e.*, met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020, and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding, and for whom the Lenders received their Lender Fees.

86.     Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

87.     The following are excluded from the Class: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

88.     *Numerosity:* The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

89.     *Commonality:* There is a commonality in questions of law and fact affecting the Class.  *See* Fed. R. Civ. P. 23(a)(2).  These questions of law and fact include, but are not limited to the following:

     a.   Whether Plaintiff is an "agent" as that term is defined by the Act and the SBA Regulations;

     b.   Whether Defendants obtained Lender Fees for closing the PPP loans;

     c.   Whether Defendants were obligated to pay Plaintiff and the Class Members Agent Fees from the Lender Fees they received under the Act and/or SBA Regulations;

     d.   Whether Defendants failed to pay Agent Fees they were required to pay;

e.  Whether by their conduct and representations, Defendants led Plaintiff to reasonably believe that they would pay the Agent Fees under the PPP for Plaintiff's work representing Borrowers;

f.  Whether Defendants have a policy and/or practice of failing to compensate Agents and pay them the required Agent Fees out of their Lender Fees for their work in facilitating PPP loans to the detriment of Plaintiff and the Class;

g.  Whether Defendants' conduct in not paying the Agent Fees out of the Lender Fees they received constitute a conversion of the Agent Fees owed to the Plaintiff and the Class;

h.  Whether Defendants possess exclusive knowledge of material facts concerning the Application process, i.e., that the Agents would not receive the required compensation, i.e., Agent Fees, when assisting Applicants with the PPP loan process;

i.  Whether Defendants actively concealed a material fact or facts from Plaintiff and the Class Members that Agents were not going to receive their earned Agent Fees when assisting with the Applications;

j.  Whether Defendants' conduct, as alleged herein, was intentional and knowing;

k.  Whether Plaintiff and the Class Members are entitled to damages and/or restitution, and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Plaintiff and the Class Members as a result of the conduct alleged herein;

l.  Whether Defendants are likely to continue to mislead the public and the Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the Act;

m.  Whether Plaintiff and the Class Members, after discovery, have proved sufficient facts to entitle them to an award of punitive damages; and

n.  Whether Plaintiff and the Class Members are also entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

90.  *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members in that the claims for relief are based on the same legal principles and theories arising from the same actions and omissions of Defendants affecting all Class Members.  *See* Fed. R. Civ. P. 23(a)(3).  Plaintiff and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein, and all Class Members were injured in the same way by the acts and omissions of Defendants. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions as described herein are defined by substantively identical provisions in the SBA Regulations under the Act.  Defendants' purported defenses to the claims, both legal and factual, are typical of the defenses they would try to raise to the Class claims.

91.  *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interest does not conflict with the interest of the other Class Members that Plaintiff seeks to represent.  *See* Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interest of the other Class Members.  Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions.  Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the

Class and have the financial ability to do so.  Neither Plaintiff nor its counsel has any interest adverse to other Class Members.

92.     *Predominance*: The above questions of law and fact predominate over individual questions affecting the Class Members.  Defendants' conduct described in this First Amended Complaint all stems from ignoring their obligations under the SBA Regulations setting forth the policy and procedures for payment of Agent Fees that are readily calculable from Defendants' records and other Class-wide evidence.  Class Members do not have an interest in pursuing separate individual actions against Defendants as the amount of each Class Member's claim is relatively small compared to the expense and burden of individual prosecution.  The management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.  *See* Fed. R. Civ. P. 23(b)(3).

93.     *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members.  A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained of herein on an individual basis.  Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the fruits of their misdeeds.  Any difficulties that might occur in the management of this proposed class action are insubstantial.  *See* Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(3).

94. *Ascertainability*: Upon information and belief, Defendants keep extensive computerized records of their loan Applications through, *inter alia*, computerized loan application systems and federally-mandated record-keeping practices. Through these databases, all of the Borrowers may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for each Borrower) can be determined, and thereafter, notice of this action can be disseminated in accordance with due process requirements.

95. Neither Plaintiff nor the Class have previously litigated the claims asserted in this First Amended Complaint.

**COUNT I**
**(DECLARATORY RELIEF)**

96. Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

97. Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents defined by the SBA Regulations.

98. Plaintiff and the Class Members, as Agents under the PPP, assisted their clients and/or employers, the PPP Borrowers, with submitting Applications to obtain PPP loans under the Act and shepherded the Borrowers through the complexities of the PPP loan process, which led to funded PPP loans. Defendants failed to pay Agent Fees owed to Plaintiff and the Class Members as required by SBA Regulations, and/or violated the SBA Regulations by refusing to recognize the existence of the Agents and their entitlement to Agent Fees, despite having been paid their own Lender Fees under the same PPP. Instead, Defendants kept all of the origination and processing fees for themselves in direct violation of the SBA Regulations.

99.     A bona fide adverse interest exists between Plaintiff and Defendants with respect to Plaintiff and the Class Members' right to the Agent Fees owed by Defendants, and Defendants deny that any Agent Fees are owed to Plaintiff.  Plaintiff and the Class Members have a legally protectable interest under the SBA Regulations in that they are entitled to their mandated Agent Fees in connection with the professional services rendered to their clients or employers in preparing and submitting Applications for PPP funds.

100.    Cavalierly ignoring the clear and unequivocal Agent Fee mandate in the PPP and SBA Regulations, as well as the procedures and application requirements expressly created by Congress to be distinct from pre-PPP SBA 7(a) loan requirements, all of which have been acknowledged by other Lenders, Defendants have skirted their statutory obligations under the irrelevant premise Plaintiff did not have any agreement with Defendants for Agent Fees, nor did Plaintiff disclose itself as an Agent, and thus Defendants purportedly were not aware of Plaintiff existence.

101.    Plaintiff rejects Defendants' erroneous interpretation of the PPP  (at odds even with other Lenders' positions) and contends that it is entitled to the Agent Fees for the work it performed under the PPP and in accordance with SBA Regulations, which supersede the traditional SBA 7(a) loan requirements and procedures, and specifically require fees to be paid to the Agents out of the Lender Fees received for each loan they process.

102.    Defendants, as Lenders, know or should know about the Act and the SBA Regulations (and all guidance concerning the PPP), which informed them of the mandated Agent Fees.  For these Lenders to feign ignorance of the SBA Regulations or urge an unreasonable interpretation and construction of the SBA Regulations and the Act that Agents are only entitled

to be paid for their work with Borrowers if and only if the Lenders approve of their arrangement first in order to deny paying the Agent Fees is in bad faith.

103. Defendants have failed and refused, and continue to fail and refuse, to pay the mandated Agent Fees to Plaintiff and the Class Members as required under the SBA Regulations.

104. Plaintiff and the Class seek a declaration, in accordance with SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to fill out, sign, and submit Form 159 to the SBA, set aside money to pay the Agent Fees, and to pay the Agent Fees the Borrowers' Agents have earned for the work performed on behalf of their clients that received a PPP loan from the Defendants.

105. Plaintiff and the Class seek a declaration in accordance with the SBA Regulations that a portion of the Lender Fees paid to Defendants must be paid to Plaintiff and the Class.

## COUNT II
## VIOLATIONS OF THE CARES ACT

106. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

107. The Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which provides unprecedented financial assistance to small- and medium-sized businesses to prevent them from going under.

108. There is an implied cause of action arising under the Act, as: (i) Plaintiff is a member of the class for whose benefit the Act was enacted; (ii) it was Congress's intent to create a remedy for Plaintiff under the Act; (iii) it is consistent with the underlying purposes of the Act to imply such a remedy; and (iv) Plaintiff's cause of action is not traditionally relegated to state law, nor is it in an area that is traditionally the concern of the States.

109. The Act, along with the SBA Regulations, provides for the payment of Agent Fees to authorized representatives who assisted PPP loan applicants with their PPP Applications (*i.e.*, PPP Agents consisting of Plaintiff and the Class Members).

110. Nevertheless, Defendants refused to fill out, sign, and submit the required Form 159, and refused, and continue to refuse, to pay Plaintiff and the Class Members the authorized Agent Fees.

111. In disregard for the law, Defendants have failed and/or refused to pay the Agent Fees to the Borrowers' authorized representatives (*i.e.*, PPP Agents consisting of Plaintiff and the Class Members), and instead kept the fees to enrich themselves.

112. Plaintiff and Class Members are PPP Agents under the Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lenders by the federal government and are to be paid by the Lenders to the Plaintiff and Class Members as set forth in the Act and the SBA Regulations.

113. Nevertheless, Defendants refused to pay Plaintiff and the Class Members the authorized Agent Fees.

114. As a direct and proximate result of Defendants' failure and/or refusal to comply with the Act and the SBA Regulations, Plaintiff and the Class Members have suffered damages in excess of $5 million.

**COUNT III**
**VIOLATIONS OF THE SBA's 7(a) LOAN PROGRAM, 15 U.S.C. § 636(a)**

115. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

116.     In order to rapidly connect limited PPP funds to Borrowers in desperate need of a cash-infusion following the COVID-19 pandemic and State-ordered business closings and quarantines, the Treasury, rather than creating a new federal bureaucracy, instead designated the SBA to administer the PPP.

117.     The SBA in turn elected to expand its existing 7(a) loan program to include the PPP, but expressly superseded many of the rules and regulations of 7(a) and replaced them with a substantially streamlined set of PPP requirements, the above-referenced SBA Regulations.

118.     There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the Act, as: (i) Plaintiff is a member of the class for whose benefit the Act was enacted; (ii) it was Congress's intent to create a remedy for Plaintiff under the Act; (iii) it is consistent with the underlying purposes of the Act to imply such a remedy; and (iv) Plaintiff's cause of action is not traditionally relegated to state law, nor is it in an area that is traditionally the concern of the States.

119.     The SBA Regulations and SBA SOP provide for the payment of Agent Fees to authorized representatives that assisted PPP Borrowers with their PPP Applications (*i.e.*, PPP Agents consisting of the Plaintiff and the Class Members).

120.     In disregard for the law, Defendants have failed and/or refused to pay Agent Fees to Plaintiff and the Class Members, and instead have kept the fees to enrich themselves.  By contrast, other Lenders have agreed with Agents such as Plaintiff and have agreed to pay the Agent Fees from their Lender Fees paid as part of the PPP.

121.     Further, Defendants by their conduct, including participating as PPP Lenders, are bound to comply with the SBA Regulations as agents of the federal government, and to pay the Agent Fees out of the Lender Fees received under the PPP.  Defendants, by their conduct, also led

Plaintiff and the Class Members to reasonably believe that they would be paid for their services as the Borrowers' Agents.

122. As a direct and proximate result of Defendants' wrongful actions, Plaintiff and the Class Members have suffered damages in excess of $5 million.

**COUNT IV**
**(TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS)**

123. Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

124. Defendants have intentionally and tortiously interfered with Plaintiff's and the Class Members' economic relations with their Borrower clients by circumventing and ignoring their obligations to comply with the Agent Fee payment requirements under the SBA Regulations and improperly retaining monies owed to Agent.

125. Upon information and belief, Defendants improperly allege that Plaintiff and the Class Members are not entitled to the Agent Fees or are only entitled to a portion of the Agent Fees, despite the clear and unambiguous terms in the SBA Regulations.

126. Defendants knowingly and intentionally engaged in lending to businesses under the PPP and thus were required to abide by the obligations unambiguously set forth in the SBA Regulations to pay Plaintiff the mandated Agent Fees.

127. Plaintiff, as well as the Class Members, helped Borrower clients apply for PPP loans with the expectation, consistent with the SBA Regulations, that, while they were not permitted to charge Borrower clients fees in assisting and compiling the Applications or directing them to certain Lenders, Plaintiff and the Class Members would obtain as compensation the mandated Agent Fees from the Lenders after the Borrower clients' loans were funded.

128.     Defendants are aware, or should have been aware, of the mandated Agent Fees under the SBA Regulations.  Notwithstanding, Defendants have improperly chosen to retain the Agent Fees owed to Plaintiff and the Class.

129.     Defendants' acts constitute intentional and tortious interference with Plaintiff's and the Class Members' economic relations with their Borrower clients because Defendants improperly and wrongfully withheld monies owed to Plaintiff that were clearly provided for pursuant to the SBA Regulations and that Plaintiff earned.

130.     Defendants' improper acts or practices of refusing to pay Plaintiff  and the Class the mandated Agent Fees, and their failure to adhere to the SBA Regulations as to the PPP loans, are the proximate cause of the damages sustained by Plaintiff and the Class Members.

131.     Defendants have used improper means to obtain money from the federal Government at the expense of Plaintiff and the Class by: (a) failing to adhere to the SBA Regulations; and/or (b) wrongfully informing the Agents, such as Plaintiff and the Class Members, that they would not receive any compensation for the work they performed; and/or (c) letting Agents bring Borrowers to them seeking PPP loans, but then telling the Agents after the loans were funded that they would not be paid or would be paid less than the mandated Agent Fee.

132.     As a result, Defendants have engaged in intentional and tortious interference with Plaintiff's and the Class Members' economic relations.

133.     Defendants' conduct manifests a knowing and reckless indifference towards, and a disregard of, the rights of Plaintiff and the Class Members.

134.     Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if the relief requested herein is not granted.

135. Plaintiff and the Class Members request the Court to cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated by Defendants to Plaintiff and the Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and the Class Members compensatory damages, pecuniary damages and such other damages and relief as the Court deems just and proper.

**COUNT V**
**(UNJUST ENRICHMENT)**

136. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

137. In the alternative, Plaintiff asserts this cause of action on behalf of itself and Class Members as Agents.

138. Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of Plaintiff and the Class Members as a result of Defendants' wrongful withholding of Agent Fees from the Lender Fees they received, and are now owed to Plaintiff and the Class Members. Defendants have been unjustly benefitted through the unlawful and wrongful retention of monies due to the Agents (*i.e.*, the Agent Fees) as a result of the funding of the PPP loans and Defendants' receipt of their Lender Fees under the same program. Specifically, Plaintiff and the Class Members provided services to the Borrowers to help the Borrowers obtain PPP loans, which resulted in the conferral of benefits on Defendants – the corresponding Agent Fees – that Defendants knew of and appreciated. Defendants then inequitably retained for their own benefit Agent Fees that Plaintiff and the Class Members were entitled to be paid for work performed.

139.     To participate in the PPP, "Lenders must comply with the applicable lender obligations set forth in this [SBA PPP Interim Final Rule] . . ."[23] Despite Plaintiff's and the Class Members' considerable efforts serving as PPP Agents on behalf of the Borrowers, Defendants have failed to pay the statutorily-required Agent Fees in violation of the SBA Regulations.

140.     Plaintiff and the Class Members provided Defendants with the Borrowers and the PPP loans with the reasonable expectation of being paid as Agents under the SBA Regulations.

141.     Defendants by their conduct, including participating as PPP Lenders, are bound to comply with the SBA Regulations as an agent of the federal government, and to pay the Agent Fees out of the Lender Fees received under the PPP.  Defendants, by their conduct, also led Plaintiff and the Class Members reasonably to believe that they would be paid for their services as the Borrowers' Agents.

142.     Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid.  Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class Members for their efforts in promoting the interests of the Act and ensuring that small- and medium-sized businesses receive PPP loans.

143.     By holding themselves out as PPP lenders, Defendants by their conduct requested Plaintiff and the Class Members to assist Borrowers with their Applications and have the Applications submitted to Defendants for approval.

---

[23]     SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20812.

144.    Defendants have failed and refused to pay the rest of the monies owed to Plaintiff and the Class Members, despite multiple requests for the Agent Fees, and is choosing to retain the Agent Fees for themselves in direct violation of SBA regulations.

145.    Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to fill out, sign, and submit the required Form 159 and to forward to the PPP Agents the mandated Agent Fees that the Federal Government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

146.    Plaintiff and the Class Members have no other means of obtaining compensation because the SBA Regulations prohibit PPP Agents from receiving payment from any other source other than the Lender Fees and expressly prohibit fees from the Borrowers.

147.    Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the mandated Agent Fees that the federal government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and Act.

148.    It is against equity and good conscience that Defendants be permitted to retain the benefits conferred upon them by Plaintiff and the Class Members.

149.    Plaintiff and the Class Members respectfully request this Court to order Defendants to disgorge the amount of the Agent Fees which Defendants wrongfully misappropriated from Plaintiff and the Class Members, enjoin Defendants from continuing the improper acts as discussed herein and award Plaintiff and the Class Members such other damages and relief that this Court deems just and proper.

**COUNT VI**
**(CONVERSION)**

150. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

151. Under the SBA Regulations, Plaintiff and the other Class Members have an immediate right to the mandatory and identifiable Agent Fees owed to them to be paid from the Lender Fees provided to Defendants for lending money pursuant to the approved Applications.

152. Under the PPP, the Agent cannot look to the Treasury or to the Borrowers for direct payment of their Agent Fees. Instead, the Agent Fees are paid to the Lender as part of the Lender Fees, and the Lender is obligated to pay the Agent Fees over to the Agent.

153. As alleged herein, the Agent Fees were paid to the Lenders as part of the Lender Fees paid to Defendants for each Borrowers' loan. The Lender Fees were placed in Defendants' custody to be used to pay Plaintiff and the other Class Members the Agent Fees they had earned.

154. Additionally, the SBA Regulations require that Lenders, not Borrowers, pay the Agent Fees and fill out, sign and submit Form 159 to the SBA. The SBA Regulations unequivocally state that "Agents may not collect fees from the borrower."

155. Defendants are obligated to pay Plaintiff and other Class Members the mandatory Agent Fees according to the SBA Regulations.

156. Defendants willfully interfered with the property of Plaintiff and the other Class Members without lawful justification and intended to exercise dominion and control over such property inconsistent with Plaintiff's and the Class Members' rights. Defendants misappropriated and retained the monies paid to Defendants as part of their Lender Fees and allocated by Treasury for the Agent Fees due upon the funding of Plaintiff and the other Class Members' clients' or employers' PPP loans.

157. By doing so, Defendants deprived Plaintiff and the other Class Members of the use and possession of the Agent Fees.

158. Under prevailing law, money may be the subject of a conversion claim if the money was placed in the custody of another for a definite application. That requirement is met because the Agent Fees, as segregated portions of the Lender Fees awarded through the SBA Regulations for successfully funded PPP loans, are placed in the custody of the Lenders for distribution to the Agents.

159. At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees paid to them as part of their Lender Fees were owed to Plaintiff and the other Class Members.

160. Defendants' conduct manifests a willful or reckless disregard of Plaintiff's and the Class Members' right of possession to the monies owed to them.

161. Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by Plaintiff and the Class Members.

162. Plaintiff and the Class Members respectfully request that this Court cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated and converted by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, punitive damages, and such other damages and relief that this Court deems just and proper.

## CLAIM VII
## QUANTUM MERUIT

163. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

164. Plaintiff asserts this cause of action on behalf of itself and the Class Members.

165. Plaintiff and the Class Members performed valuable services for Defendants as described herein.

166. Plaintiff, in fact, expected Defendants to pay it the Agent Fees for the costs and services incurred in preparing and submitting the loan applications upon approval, or at least upon funding of each of their clients' and/or employers' loans under the Act and PPP, as required by the SBA Regulations.

167. Plaintiff and the Class Members operated under the assumption that Defendants would follow the Act and the SBA Regulations and remit payment of the PPP Agent Fees as required by law.

168. Plaintiff and the Class Members were induced and encouraged by the Defendants' conduct to serve as Agents under the PPP, and Plaintiff and the Class Members reasonably expected and relied on Defendants' operating within the law governing the loans requiring the payment of the PPP Agent Fees.

169. Defendants appreciated and had knowledge of the benefit that they received from Plaintiffs and the Class Members, *i.e.*, their services. Defendants knowingly accepted Plaintiff's and the Class Members' services, including but not limited to working with the Agents during the application process.

170. Defendants' receipt and retention of the Agent Fees without compensating Plaintiff and the Class Members would be unjust and contrary to law.

171. Plaintiff and the Class Members are thus entitled to recover from Defendants the Agent Fees that are due to them under the law.

**CLAIM VIII**
**BREACH OF CONTRACT-THIRD PARTY BENEFICIARY**

172. Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

173. Plaintiff asserts this cause of action on behalf of itself and the Class Members.

174. Based on information and belief, each Defendant entered into an agreement (the "Lender Agreement") with the SBA in connection with the loans funded in the PPP as required by Section 1102 of the CARES Act. Each Lender Agreement specifies repeatedly that it pertains to loans made under the PPP and its implementing regulations and states that "Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program, and PPP Loan Program Requirements." The Lender Agreement is "subject to" the "PPP Loan Program Requirements."

175. Each Lender Agreement required that the corresponding Lender would adhere to all PPP rules and regulations and incorporated these requirements by reference.

176. The SBA Regulations specifically require that Lenders pay the fees of any "agent" that assists with the PPP loan Application process, within the specified limits.

177. Defendants and the SBA understood that Agents involved in the preparation and submission of Applications would need to be compensated as key players in the implementation of the PPP pursuant to these regulations. Therefore, Defendants and the SBA undertook the Lender Agreements for the benefit of Plaintiff and the Class and clearly expressed an intention to confer separate and distinct benefits on Plaintiff and the Class when they did so.

178. Defendants understood that Plaintiff and the Class were intended beneficiaries in this agreement. Nevertheless, Defendants have refused to live up to their end of the bargain and have uniformly refused to pay Agent Fees to Plaintiff and the Class.

179. By refusing to pay Agent Fees in accordance with SBA regulations, Defendants are violating the terms of their agreement, thereby damaging Plaintiff and the Class. Plaintiff and the Class thus ask this Court to award them damages sufficient to make them whole, and compensate them for work they did in preparing clients' and/or employers' PPP loan Application for loans that were funded, consequential damages, and all other damages available at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members, prays for the following relief:

A. An Order certifying the Class as defined above, appointing Plaintiff as the representative for the Class, and appointing Plaintiff's counsel as counsel for the Class;

B. An Order declaring Defendants' actions to be unlawful, including an Order in favor of Plaintiff on all claims;

C. An Order declaring that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiff and the Class Members and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

D. An award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class Members, as well as equitable relief including

disgorgement and enjoining Defendants from continuing the improper acts as discussed herein, and all other available relief under applicable law;

E. An award of punitive damages pursuant to applicable law, including, but not limited to, Utah Code Ann. § 78B-8-201, for conversion and tortious interference with economic relations;

F. Reasonable attorneys' fees and expenses as permitted by applicable statutes and law, including, but not limited to, Utah Code Ann. § 78B-5-825(1);

G. Costs related to bringing this action;

H. Pre- and post-judgment interest as allowed by law; and

I. Such further relief at law or in equity that this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff, individually and on behalf of the Class Members, demands a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38(a).

Dated: October 23, 2020

I hereby respectfully submit this complaint to be true and correct to the best of my knowledge and belief.

/s/ *Michael S. Popok*__________
Michael S. Popok
Attorney for Plaintiff